## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

REALTIME DATA LLC d/b/a IXO,

      Plaintiff,

      v.

EXAGRID SYSTEMS, INC.,

      Defendant.

C.A. No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT
## AGAINST EXAGRID SYSTEMS, INC.

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.* in which Plaintiff Realtime Data LLC d/b/a IXO ("Plaintiff," "Realtime," or "IXO") makes the following allegations against Defendant Exagrid Systems, Inc. ("Exagrid Systems" or "Defendant"):

### PARTIES

1.      Realtime is a limited liability company organized under the laws of the State of New York. Realtime has places of business at 5851 Legacy Circle, Plano, Texas 75024, 1828 E.S.E. Loop 323, Tyler, Texas 75701, and 66 Palmer Avenue, Suite 27, Bronxville, NY 10708. Since the 1990s, Realtime has researched and developed specific solutions for data compression, including, for example, those that increase the speeds at which data can be stored and accessed. As recognition of its innovations rooted in this technological field, Realtime holds 50 United States patents and has numerous pending patent applications. Realtime has licensed patents in this portfolio to many of the world's leading technology companies. The patents-in-suit relate to Realtime's development of advanced systems and methods for fast and efficient data compression using numerous

1

innovative compression techniques based on, for example, particular attributes of the data.

2.      On information and belief, Exagrid Systems is a Delaware corporation with its principal place of business at 2000 West Park Drive, Westborough, Massachusetts 01581.  Exagrid Systems can be served through its registered agent, The Corporation Trust Company, Corporation Trust Center 1209 Orange St., Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendant Exagrid Systems in this action because Exagrid Systems is incorporated in Delaware and has committed acts within the District of Delaware giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Exagrid Systems would not offend traditional notions of fair play and substantial justice.  Exagrid Systems, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the asserted patents.

5.      Venue is proper in this district under 28 U.S.C. § 1400(b).  Upon information and belief, Exagrid Systems is incorporated in Delaware, has transacted business in the District of Delaware, and has committed acts of direct and indirect infringement in the District of Delaware.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 9,054,728

6. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

7. Plaintiff Realtime is the owner by assignment of United States Patent No. 9,054,728 (the "'728 Patent") entitled "Data compression systems and methods." The '728 Patent was duly and legally issued by the United States Patent and Trademark Office on June 9, 2015. A true and correct copy of the '728 Patent is included as Exhibit A.

8. On information and belief, Exagrid Systems has offered for sale, sold and/or imported into the United States Exagrid Systems products and services that infringe the '728 patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Exagrid Systems' products and services, *e.g.*, EX3000, EX5000, EX7000, EX10000E, EX13000E, EX21000E, EX32000E, EX40000E, EX63000E, and Exagrid Backup Appliances, and all versions and variations thereof since the issuance of the '728 Patent ("Accused Instrumentalities").

9. On information and belief, Exagrid Systems has directly infringed and continues to infringe the '728 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities, which constitute systems for compressing data claimed by Claim 1 of the '728 Patent, comprising: a processor; one or more content dependent data compression encoders; and a single data compression encoder; wherein the processor is configured: to analyze data within a data block to identify one or more parameters or attributes of the data wherein the analyzing of the data within the data block to identify

3

the one or more parameters or attributes of the data excludes analyzing based solely on a descriptor that is indicative of the one or more parameters or attributes of the data within the data block; to perform content dependent data compression with the one or more content dependent data compression encoders if the one or more parameters or attributes of the data are identified; and to perform data compression with the single data compression encoder, if the one or more parameters or attributes of the data are not identified.    Upon information and belief, Exagrid Systems uses the Accused Instrumentalities, which are infringing systems, for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Exagrid Systems' customers.

10.    On information and belief, Exagrid Systems has had knowledge of the '728 Patent since at least the filing of the original Complaint in this action, or shortly thereafter, and on information and belief, Exagrid Systems knew of the '728 Patent and knew of its infringement, including by way of this lawsuit.

11.    Exagrid Systems' affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way on compatible systems to infringe Claim 1 of the '728 Patent, knowing that when the Accused Instrumentalities are used in their ordinary and customary manner with such compatible systems, such systems constitute infringing systems for compressing data comprising; a processor; one or more content dependent data compression encoders; and a single data compression encoder; wherein the

processor is configured: to analyze data within a data block to identify one or more parameters or attributes of the data wherein the analyzing of the data within the data block to identify the one or more parameters or attributes of the data excludes analyzing based solely on a descriptor that is indicative of the one or more parameters or attributes of the data within the data block; to perform content dependent data compression with the one or more content dependent data compression encoders if the one or more parameters or attributes of the data are identified; and to perform data compression with the single data compression encoder, if the one or more parameters or attributes of the data are not identified. For example, Exagrid Systems explains to customers the benefits of using the Accused Instrumentalities, such as by touting their performance advantages: "ExaGrid's innovative approach minimizes the amount of data to be stored by providing standard data compression for the most recent backups, along with byte-level data deduplication for all previous backups." https://www.exagrid.com/data-sheets/. For similar reasons, Exagrid Systems also induces its customers to use the Accused Instrumentalities to infringe other claims of the '728 Patent. Exagrid Systems specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '728 Patent. Exagrid Systems performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '728 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement. On information and belief, Exagrid Systems engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.,* through Exagrid Systems' user manuals, product support, marketing materials, and training materials to actively induce the users of the accused

products to infringe the '728 Patent.  Accordingly, Exagrid Systems has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '728 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '728 Patent.

12.     Exagrid   Systems   also   indirectly   infringes   the   '728   Patent   by manufacturing, using, selling, offering for sale, and/or importing the accused products, with knowledge that the accused products were and are especially manufactured and/or especially adapted for use in infringing the '728 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.  On information and belief, the Accused Instrumentality is designed to function with compatible hardware to create a system for compressing data comprising; a processor; one or more content dependent data compression encoders; and a single data compression encoder; wherein the processor is configured: to analyze data within a data block to identify one or more parameters or attributes of the data wherein the analyzing of the data within the data block to identify the one or more parameters or attributes of the data excludes analyzing based solely on a descriptor that is indicative of the one or more parameters or attributes of the data within the data block; to perform content dependent data compression with the one or more content dependent data compression encoders if the one or more parameters or attributes of the data are identified; and to perform data compression with the single data compression encoder, if the one or more parameters or attributes of the data are not identified. Because the Accused Instrumentality is designed to operate as the claimed system for compressing, the Accused Instrumentality has no substantial non-infringing

uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.   Exagrid Systems' manufacture, use, sale, offering for sale, and/or importation of the Accused Instrumentality constitutes contributory infringement of the '728 Patent.

13.     The Accused Instrumentalities include a system for compressing data, comprising a processor.   For example, "[E]xaGrid appliances are comprised of Intel® processors, enterprise SATA/SAS drives, RAID6 with hot spare, and ExaGrid software." https://www.exagrid.com/wp-content/uploads/ExaGrid-Product-Line-Data-Sheet.pdf.

14.     The Accused Instrumentalities include a system for compressing data, comprising one or more content dependent data compression encoders.   For example, the Accused Instrumentalities perform block-level deduplication, which is a content dependent data compression encoder.   For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores."

http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data %20Sheet%20-%20Jan%2008.pdf.   As such, ExaGrid "uses zone-level deduplication, which breaks data into larger "zones" and then compares at the byte level." https://www.exagrid.com/exagrid-products/data-deduplication/.

Performing deduplication results in compression by representing data with fewer bits.

15.     The Accused Instrumentalities comprise a single data compression encoder.   For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores."

http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.  As another example, ExaGrid's approach "minimizes the amount of data to be stored by providing standard data compression for the most recent backups." https://www.exagrid.com/data-sheets/.

16.    The Accused Instrumentalities analyze data within a data block to identify one or more parameters or attributes of the data, for example, whether the data is duplicative of data previously transmitted and/or stored, where the analysis does not rely only on the descriptor.  For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.  As such, ExaGrid "uses zone-level deduplication, which breaks data into larger "zones" and then compares at the byte level." https://www.exagrid.com/exagrid-products/data-deduplication/.

17.    The Accused Instrumentalities perform content dependent data compression with the one or more content dependent data compression encoders if the one or more parameters or attributes of the data are identified.  For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.  As such, ExaGrid "uses zone-level deduplication, which breaks data into larger "zones" and then compares at the byte level." https://www.exagrid.com/exagrid-products/data-deduplication/.

18.     The Accused Instrumentalities perform data compression with the single data compression encoder, if the one or more parameters or attributes of the data are not identified.  For example, ExaGrid's approach "minimizes the amount of data to be stored by providing standard data compression for the most recent backups." https://www.exagrid.com/data-sheets/.

19.     Exagrid Systems also infringes other claims of the '728 Patent, directly and through inducing infringement and contributory infringement.

20.     On information and belief, use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the methods claimed by the '728 Patent.

21.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, and touting the benefits of using the Accused Instrumentalities' compression features, Exagrid Systems has injured Realtime and is liable to Realtime for infringement of the '728 Patent pursuant to 35 U.S.C. § 271.

22.     As a result of Exagrid Systems' infringement of the '728 Patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Exagrid Systems' infringement, but in no event less than a reasonable royalty for the use made of the invention by Exagrid Systems, together with interest and costs as fixed by the Court.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 9,667,751

23.     Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

24. Plaintiff Realtime is the owner by assignment of United States Patent No. 9,667,751 (the "'751 Patent") entitled "Data feed acceleration." The '751 Patent was duly and legally issued by the United States Patent and Trademark Office on May 30, 2017. A true and correct copy of the '751 Patent is included as Exhibit B.

25. On information and belief, Exagrid Systems has offered for sale, sold and/or imported into the United States Exagrid Systems products and services that infringe the '751 patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Exagrid Systems' products and services, *e.g.*, EX3000, EX5000, EX7000, EX10000E, EX13000E, EX21000E, EX32000E, EX40000E, EX63000E, and Exagrid Backup Appliances, and all versions and variations thereof since the issuance of the '751 Patent ("Accused Instrumentalities").

26. On information and belief, Exagrid Systems has directly infringed and continues to infringe the '751 Patent, for example, through its own use and testing of the Accused Instrumentalities, which in the ordinary course of their operation form a system for compressing data claimed by Claim 25 of the '751 Patent, including: a data server implemented on one or more processors and one or more memory systems; the data server configured to analyze content of a data block to identify a parameter, attribute, or value of the data block that excludes analysis based solely on reading a descriptor; the data server configured to select an encoder associated with the identified parameter, attribute, or value; the data server configured to compress data in the data block with the selected encoder to produce a compressed data block, wherein the compression utilizes a state machine; and the data server configured to store the compressed data block; wherein the time of the compressing the data block and the storing the compressed data block is

less than the time of storing the data block in uncompressed form.  Upon information and belief, Exagrid Systems uses the Accused Instrumentalities, which are infringing systems, for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Exagrid Systems' customers.

27.    On information and belief, Exagrid Systems has had knowledge of the '751 Patent since at least the filing of the original Complaint in this action, or shortly thereafter, and on information and belief, Exagrid Systems knew of the '751 Patent and knew of its infringement, including by way of this lawsuit.

28.    Upon information and belief, Exagrid Systems' affirmative acts of making, using, and selling the Accused Instrumentalities, and providing implementation services and technical support to users of the Accused Instrumentalities, have induced and continue to induce users of the Accused Instrumentalities to use them in their normal and customary way to infringe Claim 25 of the '751 Patent by making or using a data server implemented on one or more processors and one or more memory systems; the data server configured to analyze content of a data block to identify a parameter, attribute, or value of the data block that excludes analysis based solely on reading a descriptor; the data server configured to select an encoder associated with the identified parameter, attribute, or value; the data server configured to compress data in the data block with the selected encoder to produce a compressed data block, wherein the compression utilizes a state machine; and the data server configured to store the compressed data block; wherein the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form.  For example, Exagrid

Systems explains to customers the benefits of using the Accused Instrumentalities, such as by touting their efficiency: "ExaGrid's innovative approach minimizes the amount of data to be stored by providing standard data compression for the most recent backups, along with byte-level data deduplication for all previous backups." https://www.exagrid.com/data-sheets/.  For similar reasons, Exagrid Systems also induces its customers to use the Accused Instrumentalities to infringe other claims of the '751 Patent.  Exagrid Systems specifically intended and was aware that these normal and customary activities would infringe the '751 Patent.  Exagrid Systems performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '751 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Exagrid Systems engaged in such inducement to promote the sales of the Accused Instrumentalities.  Accordingly, Exagrid Systems has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '751 Patent, knowing that such use constitutes infringement of the '751 Patent.

29.     Exagrid Systems also indirectly infringes the '751 Patent by manufacturing, using, selling, offering for sale, and/or importing the accused products, with knowledge that the accused products were and are especially manufactured and/or especially adapted for use in infringing the '751 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.  On information and belief, the Accused Instrumentality is designed to function as a data server implemented on one or more processors and one or more memory systems; the data server configured

to analyze content of a data block to identify a parameter, attribute, or value of the data block that excludes analysis based solely on reading a descriptor; the data server configured to select an encoder associated with the identified parameter, attribute, or value; the data server configured to compress data in the data block with the selected encoder to produce a compressed data block, wherein the compression utilizes a state machine; and the data server configured to store the compressed data block; wherein the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form. Because the Accused Instrumentality is designed to operate as the claimed system for compressing, the Accused Instrumentality has no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. Exagrid Systems' manufacture, use, sale, offering for sale, and/or importation of the Accused Instrumentality constitutes contributory infringement of the '751 Patent.

30.     The Accused Instrumentalities include a system for compressing data.  For example, "[E]xaGrid combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores."

http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.

31.     The Accused Instrumentalities include a data server implemented on one or more processors and one or more memory systems.  For example, "[E]xaGrid adds compute with capacity in a GRID configuration, which means that as data volumes increase, full appliances are added to the GRID that each bring processor, memory, and network ports as well as storage capacity."     https://www.exagrid.com/wp-

content/uploads/ExaGrid-Advantages.pdf.  On information and belief, all of the Accused

Instrumentalities use one or more memory systems in substantially the same way.

32.     The Accused Instrumentalities include a data server configured to analyze

content of a data block to identify a parameter, attribute, or value of the data block that

excludes analysis based solely on reading a descriptor.  For example, ExaGrid "combines

high quality SATA drives, compression and byte-level data deduplication for fast and

reliable backups and restores."

http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data

%20Sheet%20-%20Jan%2008.pdf.    As such, ExaGrid "uses zone-level deduplication,

which breaks data into larger "zones" and then compares at the byte level."

https://www.exagrid.com/exagrid-products/data-deduplication/.

33.     The Accused Instrumentalities include a data server configured to select

an encoder associated with the identified parameter, attribute, or value. For example, the

Accused Instrumentalities select between deduplication or other compression. For

example, ExaGrid "combines high quality SATA drives, compression and byte-level data

deduplication for fast and reliable backups and restores."

http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data

%20Sheet%20-%20Jan%2008.pdf.    As such, ExaGrid "uses zone-level deduplication,

which breaks data into larger "zones" and then compares at the byte level."

https://www.exagrid.com/exagrid-products/data-deduplication/.

34.     The Accused Instrumentalities include a data server configured to

compress data in the data block with the selected encoder to produce a compressed data

block, wherein the compression utilizes a state machine.   For example, ExaGrid

"combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores."

http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.   As such, ExaGrid "uses zone-level deduplication, which breaks data into larger "zones" and then compares at the byte level." https://www.exagrid.com/exagrid-products/data-deduplication/.

35.    The Accused Instrumentalities include a data server configured to store the compressed data block.  For example, the Accused Instrumentalities have storage devices, that are managed by controllers.  For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores."

http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.   Moreover, the figure below shows the Accused Instrumentalities include a data server that stores compressed data blocks.



https://www.exagrid.com/exagrid-products/product-architecture/exagrid-versus-backup-software-deduplication/.   On information and belief, all of the Accused Instrumentalities include a data server configured to store the compressed data block in substantially the

same way.

36.     The time of the compressing the data block and the storing the compressed data block in the Accused Instrumentalities is less than the time of storing the data block in uncompressed form.  Due to the data reduction and acceleration features of the specific compression algorithms used, the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form.  For example, "[E]xaGrid's unique combination of adaptive deduplication, landing zone, and scale-out storage architecture enables IT departments to achieve the shortest backup window and the fastest, most reliable restores, tape copies, and VM boots without performance           degradation           or           forklift           upgrades           as           data           grows." https://www.exagrid.com/exagrid-products/resources/data-sheets/.   As another example, "[E]xaGrid's byte-level data de-duplication technology provides a WAN efficiency on average                    of                    50                    to                    1." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data %20Sheet%20-%20Jan%2008.pdf.

37.     On information and belief, Exagrid Systems also infringes, directly and through induced infringement, and continues to infringe other claims of the '751 Patent.

38.     On information and belief, use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the methods claimed by the '751 Patent.

39.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, and touting the benefits of using the

Accused Instrumentalities' compression features, Exagrid Systems has injured Realtime and is liable to Realtime for infringement of the '751 Patent pursuant to 35 U.S.C. § 271.

40.     As a result of Exagrid Systems' infringement of the '751 Patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Exagrid Systems' infringement, but in no event less than a reasonable royalty for the use made of the invention by Exagrid Systems, together with interest and costs as fixed by the Court.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 7,415,530

41.     Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

42.     Plaintiff Realtime is the owner by assignment of United States Patent No. 7,415,530 (the "'530 Patent") entitled "System and methods for accelerated data storage and retrieval."  The '530 Patent was duly and legally issued by the United States Patent and Trademark Office on August 19, 2008.  A true and correct copy of the '530 Patent is included as Exhibit C.

43.     On information and belief, Exagrid Systems has made, used, offered for sale, sold and/or imported into the United States Exagrid Systems products that infringe the '530 Patent, and continues to do so.  By way of illustrative example, these infringing products include, without limitation, Exagrid Systems' products and services, e.g., EX3000, EX5000, EX7000, EX10000E, EX13000E, EX21000E, EX32000E, EX40000E, EX63000E, and Exagrid Backup Appliances, and all versions and variations thereof since the issuance of the '530 patent ("Accused Instrumentality").

44.     On information and belief, Exagrid Systems has directly infringed and continues to infringe the '530 Patent, for example, through its own use and testing of the Accused Instrumentality, which constitutes a system comprising: a memory device; and a data accelerator, wherein said data accelerator is coupled to said memory device, a data stream is received by said data accelerator in received form, said data stream includes a first data block and a second data block, said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique, said first and second compression techniques are different, said compressed data stream is stored on said memory device, said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form, a first data descriptor is stored on said memory device indicative of said first compression technique, and said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block.   Upon information and belief, Exagrid Systems uses the Accused Instrumentality, an infringing system, for its own internal non-testing business purposes, while testing the Accused Instrumentality, and while providing technical support and repair services for the Accused Instrumentality to Exagrid Systems' customers.

45.     On information and belief, Exagrid Systems has had knowledge of the '530 Patent since at least the filing of this Complaint or shortly thereafter, and on information and belief, Exagrid Systems knew of the '530 Patent and knew of its infringement, including by way of this lawsuit.

46.     Upon information and belief, Exagrid Systems' affirmative acts of making, using, and selling the Accused Instrumentalities, and providing implementation services and technical support to users of the Accused Instrumentalities, have induced and continue to induce users of the Accused Instrumentalities to use them in their normal and customary way to infringe Claim 1 of the '530 Patent by making or using a system comprising: a memory device; and a data accelerator, wherein said data accelerator is coupled to said memory device, a data stream is received by said data accelerator in received form, said data stream includes a first data block and a second data block, said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique, said first and second compression techniques are different, said compressed data stream is stored on said memory device, said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form, a first data descriptor is stored on said memory device indicative of said first compression technique, and said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block.

47.     For example, Exagrid Systems explains to customers the benefits of using the Accused Instrumentality: "ExaGrid's innovative approach minimizes the amount of data to be stored by providing standard data compression for the most recent backups, along with byte-level data deduplication for all previous backups." https://www.exagrid.com/data-sheets/.

48.     Exagrid Systems also induces its customers to use the Accused Instrumentalities to infringe other claims of the '530 Patent.   Exagrid Systems specifically intended and was aware that these normal and customary activities would infringe the '530 Patent.   Exagrid Systems performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '530 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.   On information and belief, Exagrid Systems engaged in such inducement to promote the use of the Accused Instrumentalities.   Accordingly, Exagrid Systems has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '530 Patent, knowing that such use constitutes infringement of the '530 Patent.

49.     Exagrid Systems also indirectly infringes the '530 Patent by manufacturing, using, selling, offering for sale, and/or importing the accused products, with knowledge that the accused products were and are especially manufactured and/or especially adapted for use in infringing the '530 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.   On information and belief, the Accused Instrumentality is designed to function with compatible hardware to create a system comprising: a memory device; and a data accelerator, wherein said data accelerator is coupled to said memory device, a data stream is received by said data accelerator in received form, said data stream includes a first data block and a second data block, said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique, said first and

second compression techniques are different, said compressed data stream is stored on said memory device, said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form, a first data descriptor is stored on said memory device indicative of said first compression technique, and said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block. Because the Accused Instrumentality is designed to operate as the claimed system for compressing, the Accused Instrumentality has no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.   Exagrid Systems' manufacture, use, sale, offering for sale, and/or importation of the Accused Instrumentality constitutes contributory infringement of the '530 Patent.

50.     The Accused Instrumentality includes the memory device and includes the data accelerator, wherein said data accelerator is coupled to said memory device.  For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data %20Sheet%20-%20Jan%2008.pdf.  As another example, "[E]xaGrid adds compute with capacity in a GRID configuration, which means that as data volumes increase, full appliances are added to the GRID that each bring processor, memory, and network ports as well as storage capacity."   https://www.exagrid.com/wp-content/uploads/ExaGrid-Advantages.pdf.  In addition, in the figure below the Accused Instrumentality includes a memory device coupled to the data accelerator.



https://www.exagrid.com/exagrid-products/product-architecture/exagrid-versus-backup-software-deduplication/.

51.     The Accused Instrumentality receives an incoming stream of data.  For example, ExaGrid "uses zone-level deduplication, which breaks data into larger "zones" and then compares at the byte level." https://www.exagrid.com/exagrid-products/data-deduplication/.  Figure below also illustrated that the Accused Instrumentality receives a stream of data.



https://www.exagrid.com/exagrid-products/product-architecture/exagrid-versus-backup-software-deduplication/.

52.     The Accused Instrumentality's received data stream comprise more than one data block.  For example, ExaGrid "uses zone-level deduplication, which breaks data

into larger "zones" and then compares at the byte level." https://www.exagrid.com/exagrid-products/data-deduplication/.   Figure below also illustrated that received data stream comprises more than one data block.



https://www.exagrid.com/exagrid-products/product-architecture/exagrid-versus-backup-software-deduplication/.

53.     The Accused Instrumentality compresses said data stream to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique.   For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data %20Sheet%20-%20Jan%2008.pdf.   As another example, "[E]xaGrid's innovative approach minimizes the amount of data to be stored by providing standard data compression for the most recent backups, along with byte-level data de-duplication for all previous backups."

http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data %20Sheet%20-%20Jan%2008.pdf.

54.     The first and second compression techniques used by the Accused Instrumentality described above are different.  For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups                           and                           restores." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.    As another example, "[E]xaGrid's innovative approach minimizes the amount of data to be stored by providing standard data compression for the most recent backups, along with byte-level data de-duplication for all previous backups."

http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.

55.     After compression, said compressed data stream is stored on said memory device.  For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.    In addition, in the figure below the Accused Instrumentality stores compressed data on a memory device.



https://www.exagrid.com/exagrid-products/product-architecture/exagrid-versus-backup-software-deduplication/.

56.     Said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form.  For example, "[E]xaGrid's unique combination of adaptive deduplication, landing zone, and scale-out storage architecture enables IT departments to achieve the shortest backup window and the fastest, most reliable restores, tape copies, and VM boots without performance degradation or forklift upgrades as data grows."   https://www.exagrid.com/exagrid-products/resources/data-sheets/.   As another example, "[E]xaGrid's byte-level data de-duplication technology provides a WAN efficiency on average of 50 to 1." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.

57.     The Accused Instrumentality stores a first data descriptor on said memory device indicative of said first compression technique.  For example, ExaGrid discloses that "[U]nique up to 50 to 1 data de-duplication technology combined with last backup compression reduces the amount of disk space needed by as much as 50 to 1 …." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.  More specifically, ExaGrid stores tracking table also known as "hash table" on a memeory device.  For example, "[E]xaGrid uses zone-level deduplication, which breaks data into larger "zones" and then compares at the byte level. This approach allows for the best of all worlds. First, the tracking table is 1,000th the size of the block-level approach and allows for full appliances in a hyper-converged scale-out solution."  https://www.exagrid.com/exagrid-products/data-deduplication/.

58.     On information and belief, Exagrid Systems also infringes, directly and through induced infringement and contributory infringement, and continues to infringe other claims of the '530 Patent.

59.     On information and belief, use of the Accused Instrumentality in its ordinary and customary fashion results in infringement of the methods claimed by the '530 Patent.

60.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, and touting the benefits of using the Accused Instrumentalities' compression features, Exagrid Systems has injured Realtime and is liable to Realtime for infringement of the '530 Patent pursuant to 35 U.S.C. § 271.

61.     As a result of Exagrid Systems' infringement of the '530 Patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Exagrid Systems' infringement, but in no event less than a reasonable royalty for the use made of the invention by Exagrid Systems, together with interest and costs as fixed by the Court.

### COUNT IV
### INFRINGEMENT OF U.S. PATENT NO. 9,116,908

62.     Plaintiff Realtime realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

63.     Plaintiff Realtime is the owner by assignment of United States Patent No. 9,116,908 (the "'908 Patent") entitled "System and methods for accelerated data storage and retrieval."  The '908 Patent was duly and legally issued by the United States Patent and Trademark Office on August 25, 2015, and Claims 1, 2, 4-6, 9, 11, 21, 22, 24, and 25 of the '908 Patent confirmed as patentable in a Final Written Decision of the Patent Trial

and Appeal Board on October 31, 2017.  A true and correct copy of the '908 Patent is included as Exhibit D.

64.     On information and belief, Exagrid Systems has offered for sale, sold and/or imported into the United States Exagrid Systems products and services that infringe the '908 Patent, and continues to do so.  By way of illustrative example, these infringing products and services include, without limitation, Exagrid Systems' products and services, *e.g.*, EX3000, EX5000, EX7000, EX10000E, EX13000E, EX21000E, EX32000E, EX40000E, EX63000E, and Exagrid Backup Appliances, and the system hardware on which they operate, and all versions and variations thereof since the issuance of the '908 Patent (the "Accused Instrumentality").

65.     On information and belief, Exagrid Systems has directly infringed and continues to infringe the '908 Patent, for example, through its own use and testing of the Accused Instrumentality, which constitutes a system comprising: a memory device; and a data accelerator configured to compress: (i) a first data block with a first compression technique to provide a first compressed data block; and (ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block; wherein the compressed first and second data blocks are stored on the memory device, and the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form. Upon information and belief, Exagrid Systems uses the Accused Instrumentality, an infringing system, for its own internal non-testing business purposes, while testing the Accused Instrumentality, and while providing technical support and repair services for the Accused Instrumentality to Exagrid Systems' customers.

66.     On information and belief, use of the Accused Instrumentality in its ordinary and customary fashion results in infringement of the systems claimed by the '908 Patent.

67.     On information and belief, Exagrid Systems has had knowledge of the '908 Patent since at least the filing of this First Amended Complaint or shortly thereafter, and on information and belief, Exagrid Systems knew of the '908 Patent and knew of its infringement, including by way of this lawsuit.

68.     Upon information and belief, Exagrid Systems' affirmative acts of making, using, and selling the Accused Instrumentalities, and providing implementation services and technical support to users of the Accused Instrumentalities, have induced and continue to induce users of the Accused Instrumentalities to use them in their normal and customary way to infringe Claim 1 of the '908 Patent by making or using a system comprising: a memory device; and a data accelerator configured to compress: (i) a first data block with a first compression technique to provide a first compressed data block; and (ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block; wherein the compressed first and second data blocks are stored on the memory device, and the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form.  For example, Exagrid Systems explains to customers the benefits of using the Accused Instrumentalities, such as by touting their performance advantages: "ExaGrid's innovative approach minimizes the amount of data to be stored by providing standard data compression for the most recent backups, along with byte-level data deduplication for all previous backups."

https://www.exagrid.com/data-sheets/.  For similar reasons, Exagrid Systems also induces its customers to use the Accused Instrumentalities to infringe other claims of the '908 Patent.  Exagrid Systems specifically intended and was aware that these normal and customary activities would infringe the '908 Patent.  Exagrid Systems performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '908 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Exagrid Systems engaged in such inducement to promote the sales of the Accused Instrumentalities.  Accordingly, Exagrid Systems has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '908 Patent, knowing that such use constitutes infringement of the '908 Patent.

69.     Exagrid Systems also indirectly infringes the '908 Patent by manufacturing, using, selling, offering for sale, and/or importing the accused products, with knowledge that the accused products were and are especially manufactured and/or especially adapted for use in infringing the '908 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.  On information and belief, the Accused Instrumentality is designed to function as a system comprising: a memory device; and a data accelerator configured to compress: (i) a first data block with a first compression technique to provide a first compressed data block; and (ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block; wherein the compressed first and second data blocks are stored on the memory device, and the compression and storage

occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form. Because the Accused Instrumentality is designed to operate as the claimed system for compressing, the Accused Instrumentality has no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. Exagrid Systems' manufacture, use, sale, offering for sale, and/or importation of the Accused Instrumentality constitutes contributory infringement of the '908 Patent.

70. The Accused Instrumentality includes a memory device and a data accelerator configured to compress: (i) a first data block with a first compression technique (e.g., deduplication) to provide a first compressed data block; and (ii) a second data block with a second compression technique (e.g., another compression), different from the first compression technique, to provide a second compressed data block. For example, the Accused Instrumentalities also use one or more memory devices. For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data %20Sheet%20-%20Jan%2008.pdf. Moreover, ExaGrid discloses that "[U]nique up to 50 to 1 data de-duplication technology combined with last backup compression reduces the amount of disk space needed by as much as 50 to 1 …." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data %20Sheet%20-%20Jan%2008.pdf. In addition, in the figure below the Accused Instrumentality includes a data accelerator and a memory device that stores de-duplicated and compressed data.



https://www.exagrid.com/exagrid-products/product-architecture/exagrid-versus-backup-software-deduplication/.  As another example, ExaGrid "uses zone-level deduplication, which breaks data into larger "zones" and then compares at the byte level." https://www.exagrid.com/exagrid-products/data-deduplication/.  ExaGrid's data accelerator also "minimizes the amount of data to be stored by providing standard data compression for the most recent backups."  https://www.exagrid.com/data-sheets/.

71.     The Accused Instrumentality stores the compressed first and second data blocks on the memory device.  For example, ExaGrid "combines high quality SATA drives, compression and byte-level data deduplication for fast and reliable backups and restores."
http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.  Moreover, ExaGrid discloses that "[U]nique up to 50 to 1 data de-duplication technology combined with last backup compression reduces the amount of disk space needed by as much as 50 to 1 …."
http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.   In addition, in the figure below the Accused Instrumentality stores compressed data on a memory device.



https://www.exagrid.com/exagrid-products/product-architecture/exagrid-versus-backup-software-deduplication/.  The compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form. For example, "[E]xaGrid's unique combination of adaptive deduplication, landing zone, and scale-out storage architecture enables IT departments to achieve the shortest backup window and the fastest, most reliable restores, tape copies, and VM boots without performance degradation or forklift upgrades as data grows." https://www.exagrid.com/exagrid-products/resources/data-sheets/.  As another example, "[E]xaGrid's byte-level data de-duplication technology provides a WAN efficiency on average of 50 to 1." http://www.westlaketechnologies.com/global/file/Exagrid/ExaGrid%20Security%20Data%20Sheet%20-%20Jan%2008.pdf.

72.    On information and belief, Exagrid Systems also infringes, directly and through induced infringement, and continues to infringe other claims of the '908 Patent.

73.    By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, and touting the benefits of using the

Accused Instrumentalities' compression features, Exagrid Systems has injured Realtime and is liable to Realtime for infringement of the '908 Patent pursuant to 35 U.S.C. § 271.

74.     As a result of Exagrid Systems' infringement of the '908 Patent, Plaintiff Realtime is entitled to monetary damages in an amount adequate to compensate for Exagrid Systems' infringement, but in no event less than a reasonable royalty for the use made of the invention by Exagrid Systems, together with interest and costs as fixed by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Realtime respectfully requests that this Court enter:

a.      A judgment in favor of Plaintiff that Exagrid Systems has infringed, either literally and/or under the doctrine of equivalents, the '728 Patent, the '751 Patent, the '530 Patent, and the '908 Patent;

b.      A permanent injunction prohibiting Exagrid Systems from further acts of infringement of the '728 Patent, the '751 Patent, the '530 Patent, and the '908 Patent;

c.      A judgment and order requiring Exagrid Systems to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for its infringement of the '728 Patent, the '751 Patent, the '530 Patent, and the '908 Patent; and

d.      A judgment and order requiring Exagrid Systems to provide an accounting and to pay supplemental damages to Realtime, including without limitation, prejudgment and post-judgment interest;

e.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendants; and

f.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.


Dated: October 5, 2018                    BAYARD, P.A.

OF COUNSEL                                 /s/ Stephen B. Brauerman
                                          Stephen B. Brauerman (No. 4952)
Marc A. Fenster                           Sara E. Bussiere (No. 5725)
Reza Mirzaie                              600 N. King Street, Suite 400
Paul A. Kroeger                           Wilmington, DE 19801
C. Jay Chung                               (302) 655-5000
RUSS AUGUST & KABAT                       sbrauerman@bayardlaw.com
12424 Wilshire Boulevard, 12th Floor      sbussiere@bayardlaw.com
Los Angeles, CA 90025
(310) 826-7474                            *Attorneys for Plaintiff Realtime Data LLC*
mfenster@raklaw.com                       *d/b/a IXO*
rmirzaie@raklaw.com
pkroeger@raklaw.com
jchung@raklaw.com